**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CR-09-189-D |
| | ) | |
| KEITH ALLEN HENDRIX, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant's Motion to Suppress Evidence [Doc. No. 17].   The

government timely filed a response to the Motion and, on August 13, 2009, the Court held an

evidentiary hearing.  Having considered the evidence and the applicable law, the Court finds as

follows.

I.  Background:

Defendant is charged in a three-Count Indictment with crimes involving possession of a

controlled substance with the intent to distribute the same, and possession of firearms.  Specifically,

Count 1 charges that Defendant knowingly possessed in excess of 50 grams of a mixture containing

methamphetamine with intent to distribute the same, in violation of 21 U. S. C. § 841(a)(1).  In

Count 2 he is charged with knowingly possessing firearms, as described in the Indictment, in

furtherance of the drug trafficking crime alleged in Count 1 of the Indictment, a violation of 18

U. S. C.  § 924(c)(1)(A).   Count 3 alleges that he knowingly possessed firearms after having been

convicted of a felony, a violation of 18 U. S. C. § 922(g)(1).

Defendant was arrested on December 5, 2008 at the Extended Stay America motel at 4811

N.W. Expressway, in Oklahoma City, following a warrantless entry by police officers.   Certain

evidence in plain view was seized by the officers, and  a search warrant was obtained. On December

6, other officers conducted a  search pursuant to the warrant  and obtained additional evidence.

Defendant seeks suppression of all evidence, arguing that the warrantless entry into the motel room violates the Fourth Amendment because the police lacked probable cause to enter without a warrant, and no exigent circumstances justified the entry.  Because the subsequent warrant was issued in light of evidence found after the warrantless entry,  Defendant argues that  evidence must also be suppressed.

The government argues the warrantless entry was  supported by both probable cause and exigent circumstances.  It contends that the officers had probable cause to believe a drug-trafficking crime had been or was being committed, and they reasonably believed the destruction of evidence was likely if entry was delayed in order to obtain a warrant.

II.  Evidence in the record:

At the hearing, the Court heard the testimony of Oklahoma City police officers David Hanes, Ryan Robertson, and Yancy Forbes.   Defendant also testified.   In addition, three government exhibits were admitted without objection.  Exhibit 1 is the affidavit in support of the search warrant issued on December 6, 2008; Exhibit 2 is the December 6, 2008 search warrant; Exhibit 3 is the inventory of items seized by Officers Hanes and Robertson and the inventory of items later obtained pursuant to the subsequent search warrant.

Officer Hanes testified that, on the evening of December 5, 2008, he was investigating methamphetamine activity at an Oklahoma City residence.  He was accompanied by Officers Robertson and Forbes.  While at that location, Officer Hanes was approached by one of the individuals suspected of methamphetamine use; that individual was in possession of drug paraphernalia, and Hanes observed methamphetamine residue on the individual's person.  The

individual told Hanes that he had purchased the methamphetamine the previous day from a man named Keith at Room 327 of the Extended Stay America motel at 4811 N.W. Expressway in Oklahoma City.  He also told Hanes that, when he made that purchase at Room 327,  Keith had approximately one to two pounds of methamphetamine in the room.  He described Keith as having short brown hair, approximately five feet-six inches tall, and somewhat overweight.  According to the informant, Room 327 contained a video camera pointed at the  parking lot on the north side of the motel; he said there was a  monitor from which that parking lot could be viewed by the occupants of Room 327.  In addition, the informant told Officer Hanes that Keith kept zip-lock bags of methamphetamine on a table next to the door of Room 327 so that it could be accessible when purchasers arrived.   The informant agreed to accompany the officers to the motel.

Officers Hanes and Robertson testified that they proceeded to the Extended Stay America motel and located it at the address provided by the informant.  Officer Forbes transported the informant, who did not want his identity disclosed, in a separate car.  According to the officers' testimony, they parked their marked vehicles in a lot at a restaurant located on the east side of the motel.  They testified that they did so to avoid being observed by the video camera purportedly in Room 327, as  the informant had told them the camera was designed to detect police presence in the motel's north parking lot.  For that reason, Officers Hanes and Robertson walked on the south side of  the motel to its entrance on the west side.    Officer Forbes and the informant remained in a separate police vehicle in the restaurant parking lot.

According to Officer Hanes,  the motel manager confirmed that there was a Room 327 on the north side of the motel, and gave the officers directions to the room.   Hanes testified that the rooms are entered from an inside hallway, and he and Robertson rode  the elevator to the third floor

3

location of Room 327.  The motel manager accompanied them.  Upon arrival at Room 327, Officer

Hanes knocked on the door; a female asked who was there, and Hanes gave a false name.  When the

female replied that she did not know anyone by that name, Hanes identified himself as an Oklahoma

City Police officer.  Officers Hanes and Robertson both testified that, immediately thereafter, they

heard considerable movement inside the room, doors opening and closing, and a toilet flushing.

They could not tell how many people were in the room, but believed there were at least two

individuals.  When the door was not opened, Officer Hanes again identified himself as a police

officer; Hanes and Robertson continued to hear doors opening and closing and the toilet flushing.

Both officers testified that, based on their law enforcement experience involving drug-trafficking

crimes, they believed that the occupants of Room 327 were attempting to destroy evidence.

Although  Hanes twice announced he was a police officer, the occupants did not open the

door; the motel manager then opened it with his electronic key.   Testimony conflicted regardng

whether the manager was asked to open the door.  Both officers testified that they then  drew their

weapons because, based on their experience, individuals selling drugs often have weapons, and the

officers were concerned for their personal safety.

According to the officers, when the manager unlocked  the door, it  opened only about five

to six inches because it was chained from the inside.  However, Hanes and Robertson could see

inside the room, and both testified that they saw a female in the bathroom flushing the toilet.  A male

matching the informant's description of Keith then agreed to open the door.  When he did so, the

officers entered the room.  Consistent with the informant's report, zip-lock plastic bags containing

a crystal substance, which the officers believed to be methamphetamine, were located on a table next

to the entryway of Room 327.   Additional bags containing a crystal substance the officers also

believed to be methamphetamine were visible on a desk, and on a table next to the chair where Keith was seated. The officers also saw a scale and a number of empty zip-lock bags. In addition, a video camera and a monitor were in the room; the camera was pointed at the window on the north side of the room, overlooking the motel parking lot, and the monitor was operating. The officers also testified that, although it was very cold that night, the window was open; the window screen had been removed. According to the officers, the monitor displayed the north parking lot. Officer Hanes testified that he looked out the window and saw a bag and a coat on the ground below. The items on the ground were later recovered, and revealed evidence of illegal drugs.

Officer Hanes testified that, upon entry, he went to the open door of the bathroom, where a female was flushing the toilet. The officers arrested Keith and the female, who were the only occupants in Room 327. They seized the items in plain view, contacted other law enforcement officers, and secured the room. The following day, pursuant to a search warrant, the room was searched by other law enforcement personnel. The affidavit in support of the search warrant was admitted into evidence as Government Exhibit 1; the search warrant was admitted as Government Exhibit 2. Admitted as Government Exhibit 3 was the return and inventory reflecting items observed in Room 327 by Officers Hanes and Robertson; they testified that it accurately reflected the items they saw upon entry into the room. Also listed on Exhibit 3 were additional items seized pursuant to the search warrant, including additional drugs and drug paraphernalia, $32, 160.00 in currency, two revolvers, a box of ammunition, and items of dominion and control reflecting the name of Keith Hendrix.

Officer Forbes testified that he remained in his vehicle with the informant while Hanes and Robertson entered the motel. After being notified that Hanes and Robertson had arrested the

occupants of Room 327, Forbes transported the informant to a private residence; he returned to Room 327.  Officer Forbes testified that he observed the same items in plain view as described by Hanes and Robertson.  Officer Forbes later transported Defendant to the Oklahoma County jail.

Defendant testified that he had resided at the Extended Stay America motel in question for several days prior to December 5.  According to Defendant, he did not sign the paperwork for a rental agreement, and did not see any rental documents.  He did not think his name appeared on the documents, as the room had been rented by Jonathan Terry.  Defendant testified that he gave Terry cash to pay in advance for the room for a period of seven to eight days.  After Terry rented Room 327, Defendant obtained a key from him.

Defendant argues that the warrantless entry into the room was unlawful and a violation of his Fourth Amendment rights.  Because the subsequent search was pursuant to a warrant based on evidence obtained after the allegedly unlawful entry, he seeks suppression of all evidence found in Room 327.

III.  Analysis

A warrantless search of a residence  violates the Fourth Amendment unless it falls within a specific exception to the warrant requirement.  *Payton v. New York*, 445 U. S. 573, 590 (1980); *United States v. Lyons*, 510 F. 3d 1225, 1239 (10th Cir. 2007).  A guest in a motel room is similarly protected from warrantless entries.  *United States v . Parra*, 2 F. 3d 1058, 1064 (10th Cir. 1993), *cert. denied,* 510 U.S. 1026 (1993).

For a  warrantless entry into a residence to be valid, there must be both probable cause and exigent circumstances.  *Payton,* 445 U.S. at 587-88 (1980); *United States v. Davis*, 290 F. 3d 1239, 1242 (10th Cir. 2002).    The courts have recognized several exigencies which may justify a

warrantless entry. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).   Among the

recognized exigent circumstances are those in which law enforcement officers reasonably believe

that entry is required to "prevent the imminent destruction of evidence." *Id.* (citing *Ker v. California*,

374 U.S. 23, 40 (1963)); *United States v. Scroger*, 98 F. 3d 1256, 1259 (10ᵗʰ Cir. 1996).  Where the

justification for a warrantless entry is based on an officer's  belief that evidence may be destroyed,

the Tenth Circuit Court of Appeals applies a four-part analysis:

> An exception to the warrant requirement that allows police fearing the destruction
> of evidence to enter the home of [a] suspect should be (1) pursuant to clear evidence
> of probable cause, (2) available only for serious crimes and in circumstances where
> the destruction of evidence is likely, (3) limited in scope to the minimum intrusion
> necessary, and (4) supported by clearly defined indicators of exigency that are not
> subject to police manipulation or abuse.

 *Scroger*, 98 F. 3d at 1259 (citing *United States v. Aquino*, 836 F.2d 1268, 1270 (10ᵗʰ Cir. 1988);

*see also  Cortez  v. McCauley*, 478 F. 3d 1108, 1124 (10ᵗʰ Cir. 2007); *United States v . Carter*, 360

F. 3d 1235, 1241 (10ᵗʰ Cir. 2004).

The government bears the burden of proving that the warrantless entry was lawful.  *Roska*

*v. Peterson,* 328 F. 3d 1230, 1240 (10ᵗʰ Cir. 2003); *United States v. Roberts*, 14 F. 3d 502 (10ᵗʰ Cir.

1993), *cert. denied,* 514 U.S. 1043 (1995).  Similarly, the  burden rests on the government to

establish probable cause in support of a warrantless arrest.  *Romero v. Fay*  45 F. 3d 1472, 1476 n.1

(10ᵗʰ Cir.1995).  In assessing whether the burden is met, the Court is "guided by the realities of the

situation presented by the record."  *United States v. Cuaron*, 700 F.2d 582, 586 (10ᵗʰ Cir. 1983)

(citations omitted).    Courts must "evaluate the circumstances as they would have appeared to

prudent, cautious and trained officers."  *Parra*, 2 F. 3d at 1064.


A.  Probable cause:

Probable cause to support a warrantless entry exists "when under the totality of the circumstances there is a reasonable probability that a crime is being committed." *United States v. Traxler.* 477 F. 3d 1243, 1247 (10th Cir. 2007); *United States v. Gordon*, 173 F. 3d 761, 766 (10th Cir. 1999). Probable cause "requires only a probability or substantial chance of criminal activity, rather than an actual showing of such activity." *United States v. Biglow*, 562 F. 3d 1272, 1281 (10th Cir. 2009). When determining whether probable cause existed at the relevant time, the Court may not focus on facts in isolation, as the " 'totality of the circumstances' test does not depend on whether any particular factor is innocent when considered in isolation, but on whether, taken as a whole, the facts observed by the law enforcement officers indicate a fair probability" of criminal activity. *Traxler*, 477 F. 3d at 1247 (quoting *United States v. Concepcion-Ledesma*, 447 F. 3d 1307, 1316 (10th Cir.2006)). "Even where a particular factor, considered in isolation, is of 'limited significance' ..., it nonetheless may affect the Fourth Amendment analysis when combined with other indicia of probable cause or reasonable suspicion." *Id.* (quoting *United States v. Johnson*, 364 F. 3d 1185, 1192 (10th Cir.2004)). Accordingly, "no single factor is determinative, and we view the circumstances in their totality rather than individually." *Traxler*, 477 F. 3d at 1247 (quoting *United States v. Valenzuela*, 365 F. 3d 892, 897 (10th Cir.2004)).

Probable cause may be based on information provided by a confidential informant. *United States v. Quezada-Enriquez*, 567 F. 3d 1228, 1233 (10th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). "[V]eracity, reliability, and basis of knowledge are 'highly relevant' as to whether a tip can support probable cause." *Id.* (quoting *Gates*, 462 U.S. at 230). An independent determination of veracity is not always required; in fact, "when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the

informant." *United States v. Artez*, 389 F. 3d 1106, 1111 (10th Cir. 2004).  Although an informant's

reliability may be based on his history of furnishing correct information, such history is not the only

means of establishing reliability.  For example, an officer's pre-arrest visual observations can

confirm the reliability of an informant's report.  *Id.* (informant's tip that drug transactions were

occurring at a specific location was corroborated by the officers' observation of suspicious activity

at that location); *United States v. Gama-Bastidas*, 142 F. 3d 1233, 1239 (10th Cir. 1998) (reliability

of an informant's tip that cocaine was being transported in a specific vehicle at a specific location

was confirmed by law enforcement officers' observations of that vehicle at the location provided

by the informant).   The reliability of the informant is not defeated even if it is deficient in some

regard, as  the deficiency may be compensated by other indicia of reliability.  *Traxler*, 477 F. 3d at

1247.

In this case, the evidence establishes that, prior to December 5, 2008, Officers Hanes,

Robertson and Forbes had not previously received information or tips from the informant who

reported his purchase of methamphetamine from "Keith" on the previous day.   There is no evidence

that he had previously acted as an informant for other officers.  However, the fact that he was not

known to the officers does not necessarily render the information unreliable.  The Court concludes

that the evidence shows separate indicia of reliability based on the detailed information provided by

the informant and the officers' own observations confirming the accuracy of that information.

The informant admitted his possession of methamphetamine, and reported that he had

purchased methamphetamine the previous day in a specific room of a specific hotel.  At the time of

their initial contact with the informant, the officers confirmed through observation that the informant

was a user of methamphetamine. The informant further identified the seller by physical description

and first name.  The informant described the motel room, by precise room number,  and its contents,

and reported that he observed approximately one to two pounds of methamphetamine in the

described room on  the previous day.   At the time this information was provided, the informant

possessed drug paraphernalia, and Officer Hanes observed methamphetamine residue on the

informant's person.  The informant warned the officers that video surveillance from Room 327

would detect their presence if they parked in the north parking lot of the motel.  The informant was

also willing to accompany the officers to the motel.

The officers, accompanied by the informant, went to the location he identified.  Their

personal observation confirmed the accuracy of his report that an Extended Stay America motel was

located at the  address he provided.  Upon entry into the motel, they personally confirmed that there

was a Room 327, that it was occupied,  and that it was located on the north side of the motel, as

reported by the informant.    Consistent with the decisions in *Artiz*, *Gama-Bastidas, and Traxler,*

*supra,* the officers' personal observations substantially corroborated the informant's detailed report,

and are sufficient indicia of reliability to ultimately support the existence of probable cause to

believe the occupant of Room 327 had engaged in drug trafficking and was likely continuing to do

so at the time they approached the motel.  However, as discussed below, the officers' observations

and perceptions upon making contact with the occupants of Room 327 further corroborated the

information provided by the informant.

B.  Exigent circumstances:

Even if probable cause exists, however, a lawful warrantless entry also requires exigent

circumstances justifying an immediate entry.   In this case, the government contends that exigent

circumstances existed because, based on the prior experience of Officers Hanes and Robertson  and

the events which occurred when they identified themselves as police, they reasonably believed a serious crime was occurring and the destruction of evidence was likely if entry was delayed.

The Tenth Circuit has repeatedly held that drug manufacturing and trafficking are serious crimes in which the destruction of evidence is likely to occur. *Scroger*, 98 F. 3d at 1260; *Carr*, 393 F.2d at 1448. However, the fact that a drug trafficking crime is involved is not, alone, sufficient to justify a warrantless entry; the police must also have had a "reasonable basis for believing that suspects would destroy evidence" within the time period required to obtain a search warrant. *Acquino*, 836 F. 2d at 1273. In assessing whether the government has met its burden of proving exigency, the Court evaluates "the circumstances as they would have appeared to prudent, cautious, and trained officers." *United States v. Reeves*, 524 F. 3d 1161, 1169 (10th Cir. 2008); *Parra*, 2 F. 3d at 1064 (citations omitted). The determination "'ultimately depends on the unique facts of each controversy.'" *Scroger*, 98 F. 3d at 1259 (quoting *United States v. Wicks*, 995 F.2d 964, 970 (10th Cir.), *cert. denied*, 510 U. S. 982 (1993)); *Para,* 2 F. 3d at 1064.

In this case, Officers Hanes and Robertson testified that, upon initially knocking on the door of Room 327 a female answered, but did not open, the door. Thus, the officers confirmed that Room 327 was in fact currently occupied, further corroborating the information from the informant. When Officer Hanes identified himself as a police officer, the occupants of Room 327 began moving about, opening and closing doors and drawers, and repeatedly flushing the toilet. When the officers identified themselves as police a second time, they continued to hear that activity. This Circuit has held that, where officers announce their presence and then hear "shuffling and movement," a "toilet flushing," or similar conduct, they are justified in believing that the occupants are attempting to destroy evidence. *United States v . Carr*, 939 F.2d 1442, 1447 (10th Cir. 1991); *United States v.*

*Chavez*, 812 F.2d 1295, 1300 (10th Cir. 1987) (officers observed garage doors repeatedly opening and closing and lights being extinguished and believed that cocaine was being removed, concealed, or destroyed).

According to the evidence before the Court, Officers Hanes and Robertson faced circumstances which would justify a reasonable and prudent police officer's belief that the occupants of Room 327 were attempting to destroy evidence related to the serious crime of drug trafficking. Accordingly, based on the totality of the circumstances in this case, the officers faced exigent circumstances justifying a warrantless entry.

Defendant argues, however, that the government has not satisfied its burden of establishing exigent circumstances because the exigency was created by the officers' own conduct. Defendant correctly states that exigent circumstances cannot be the product of police manipulation or abuse, *see Scroger*, 98 F. 3d at 1259. Thus, Defendant argues that the exigent circumstances were manipulated here because they had no reasonable belief that evidence would be destroyed until after they had announced their presence.

In support of his contention, Defendant relies primarily on decisions from other jurisdictions in which the courts have held that a warrantless entry into a residence cannot be based on exigent circumstances where the officers created those circumstances by their own conduct. *See, e. g., United States v. Coles*, 437 F. 3d 361, 366 (3rd Cir. 2006); *United States v. Gould*, 364 F. 3d 578, 590-91 (5th Cir. 2004). As the Third Circuit observed, the Fifth Circuit "appears to have taken the lead in this area," as it has considered the issue in several decisions. *Coles*, 437 F. 3d at 367. The Fifth Circuit has held that whether officers "created" exigent circumstances requires two inquiries. *Gould*, 364 F. 3d at 590. First, the court must consider whether "the officers deliberately

created the exigent circumstances with the bad faith intent to avoid the warrant requirement;" second, "even if they did not act in bad faith, whether their actions creating the exigency were sufficiently unreasonable or improper as to preclude dispensation with the warrant requirement." *Id.* (citing *United States v. Rico*, 51 F. 3d 495, 502 (5th Cir. 1995)).   In *Gould*, the Fifth Circuit rejected the contention that the officers involved had improperly created exigent circumstances based on the argument that a warrantless entry into the residence was unnecessary because they had been conducting surveillance of the defendant for some time and could have approached him at another location.  According to the Fifth Circuit, there was no evidence to suggest that the officers acted with the intent to create an emergency to circumvent the warrant requirement, nor was there evidence suggesting that their tactics or procedures were "unreasonable or contrary to standard or good law enforcement practices." *Id.* at 591.

The Tenth Circuit has also recognized that law enforcement officers may not "create their own exigencies to avoid the necessity of a warrant to enter a person's home." *United States v. Castro*, 225 F. App'x 755, 758 (10th Cir. 2007) (unpublished opinion) (citing *United States v . Bonitz*, 826 F.2d 954, 957 (10th Cir. 1987) (exigent circumstances did not justify a warrantless search based on a claim that entry was required to ensure the officers' safety).   Although the Court has located no Tenth Circuit decision in which the Fifth Circuit's analysis in *Gould* was followed, that analysis is consistent with the rule that the exigent circumstances "are not subject to police manipulation or abuse." *See Scroger*, 98 F. 3d at 1259.  In this case, however,  Defendant does not argue that the  officers' conduct was in bad faith; nor is there any evidence in the record that they engaged in wrongful conduct  that could be characterized as creating the exigency they faced.

As  Defendant noted in closing argument,  the Tenth Circuit  held in *United States v. Reeves*,

524 F. 3d 1161 (10th Cir. 2008) that the government failed there to prove exigent circumstances justifying a warrantless entry.  However, *Reeves* is  factually distinguishable from this case, and did not involve a finding that the claimed exigency was created by the officers' own conduct.  In *Reeves*, the proffered exigencies were fear that the suspect would flee and concern for officer safety; the Circuit found the evidence did not support exigent circumstances.  Although the officers claimed immediate entry was necessary because they learned  the suspect was planning to leave for California,  the undisputed evidence established the officers did not learn of those plans until after the suspect had been taken into custody.  524 F. 3d at 1169. The officers also relied on concern for officer safety as justifying their warrantless entry; however,  the evidence proffered showed that such concern did not develop until after the officers entered the residence.  *Id.* at 1169-70.

In contrast, the evidence in this case supports the officers' claim that, after they identified themselves, they heard movement and toilet flushing and that, based on their experience, such activity signals the destruction of evidence. This activity further corroborated the information provided by the informant and reasonably presented a situation in which there was not sufficient time to obtain a search warrant.  There is no evidence to suggest that Officers Hanes, Robertson, or Forbes acted in bad faith with the intent to circumvent the requirement of a search warrant; nor is there evidence that they employed unreasonable procedures or engaged in manipulative or abusive tactics in order to create exigent circumstances.

Accordingly, having considered the evidence in the record and the governing law in this circuit, the Court concludes that the government has satisfied its burden of proving that, given the totality of the circumstances, the officers had probable cause to believe that drug trafficking was ongoing in Room 327 of the Extended Stay America motel.  Furthermore, the Court concludes that,

based on the totality of the circumstances, exigent circumstances justified their warrantless entry into Room 327 because reasonable and prudent officers faced with those circumstances would have believed there was an imminent threat that evidence would be destroyed.

C.  Scope of the intrusion:

Finally, applying the last requirement of the Tenth Circuit's test in *Scroger*,  the evidence shows that the scope of the intrusion was limited.  Officer Hanes testified that he asked Defendant for his consent to search the room, and Defendant did not consent.  There is no evidence that a search was conducted prior to the issuance of the warrant.  The evidence establishes that, after entry, the officers contacted other law enforcement personnel to obtain a search warrant.  Officers Hanes and Robertson, later joined by Officer Forbes, secured the premises of Room 327;  they seized only those items in plain view.  It was not until the following day that, pursuant to a warrant, other officers conducted a search which located additional  evidence.

IV.  Conclusion:

For the foregoing reasons, the Court finds that Defendant's Motion to Suppress [Doc. No. 17] should be, and is, DENIED.  The case will proceed accordingly.

IT IS SO ORDERED this   19th   day of August, 2009.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE